**1152**

In the Matter of George A. BOUCHER and Maxine E. Boucher, Debtors.

Elmer G. CARLSON, Appellant,

v.

George A. BOUCHER and Maxine E. Boucher, Appellees.

No. 83–1904.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 29, 1984.

Decided March 7, 1984.

Rehearing En Banc Denied April 23, 1984.

Duane L. Nelson, Lincoln, Neb., for appellant.

Michael C. Washburn, Erickson, Sederstrom, Leigh, Eisenstatt, Johnson, Kinnamon, Koukol & Fortune, P.C., Omaha, Neb., for appellees.

Before ROSS, ARNOLD and BOWMAN, Circuit Judges.

ROSS, Circuit Judge.

Appellees George and Maxine Boucher filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on May 3, 1982. At the time of filing, the Bouchers and Carlson were involved in two lawsuits in Nebraska District Court.[1] The Bouchers did not list Carlson as a creditor on their schedules or give him notice of the filing. However, the Bouchers' statement of financial affairs listed the two law-suits then pending, as well as the amount of money involved. On June 24, 1982, a creditors' meeting was held pursuant to 11 U.S.C. § 341. Carlson did not learn of the bankruptcy proceeding until July 20, 1982.

Once Carlson received notice of the Bouchers' bankruptcy filing, he attempted to file a motion to vacate the automatic stay on the state court proceedings combined with a motion to reopen the creditors' meeting. The bankruptcy court refused to accept the pleading in that form, because it was a combined motion and it was not accompanied by the appropriate filing fee.[2] Carlson's attorney then crossed out that part of the pleading requesting relief from the automatic stay, but left intact the motion to reopen the creditors' meeting. The court denied the remaining motion on August 4, 1982, granting Carlson leave to apply for an examination of the debtor under Rule of Bankruptcy Procedure 205.

During the following months Carlson filed numerous motions in bankruptcy court (detailed in his brief, pp. 3–10), as well as premature appeals to the district court. He never did, however, examine the debtor, and was not allowed an extension of time in which to file an objection to discharge. Subsequently, the debtors received a discharge in their bankruptcy proceeding on December 16, 1982. Carlson appealed the bankruptcy court's order of discharge to the district court,[3] raising the same issues presented on this appeal. The district court affirmed the order of the bankruptcy court in its entirety.

Carlson lists six arguments on appeal. Distilled to its essence, Carlson's complaint

---

1. In one suit, Carlson sought $28,000.00 in damages from the Bouchers in a dispute over some farm machinery. In the second suit, Carlson sought over $66,000.00 because of an alleged default on Boucher's part in certain business dealings with Carlson.

2. For the purposes of this opinion we refer to the Rules of Bankruptcy Procedure as they were in effect during the course of this litigation prior to the adoption of the new Bankruptcy Rules on August 1, 1983. Under Rule of Bankruptcy Procedure 701(6), a motion for re-lief from a stay was the commencement of an adversary proceeding. In the context of a bankruptcy case, an adversary proceeding is a complete civil lawsuit within the bankruptcy action. It is commenced by filing a complaint with the court, accompanied by a $60.00 filing fee. The bankruptcy court did not accept pleadings like the one mentioned above, which combined an adversary motion and a straight bankruptcy motion.

3. The Honorable C. Arlen Beam, United States District Court for the District of Nebraska.

is that the district court erred: 1) in finding that Carlson had an adequate remedy in Rule of Bankruptcy Procedure 205 for an examination of the debtor, and 2) in sustaining the bankruptcy court's denial of Carlson's motion for an extension of time to file objections to discharge.

## A. Examination of debtor

Carlson contends that the bankruptcy court erroneously denied him an opportunity to examine Boucher pursuant to 11 U.S.C. §§ 341–343. It appears that appellant is confused as to the interplay between the Bankruptcy Code and the Rules of Bankruptcy Procedure. In addition to providing for examination of any party, Rule of Bankruptcy Procedure 205 governs sections 341–343.[4]

It is undisputed that Carlson missed the first creditors' meeting through no fault of his own and that as a creditor, he should have been afforded the right to examine the debtor and establish his claim. He could have accomplished this end by examining the debtor pursuant to Rule of Bankruptcy Procedure 205 in accordance with the bankruptcy court's order. Carlson argues, however, that a creditor has an unqualified right to examine a debtor under "conditions" set forth in 11 U.S.C. §§ 341–343.[5] According to Carlson, the condition that distinguishes an examination under sections 341–343 from one conducted under Rule 205 is that the former is "free," and

---

**4.** 11 U.S.C. §§ 341–343 provide in relevant part:

**§ 341. Meetings of creditors and equity security holders**

(a) Within a reasonable time after the order for relief in a case under this title, there shall be a meeting of creditors.

**§ 342. Notice**

There shall be given such notice as is appropriate of an order for relief in a case under this title.

**§ 343. Examination of the debtor**

The debtor shall appear and submit to examination under oath at the meeting of creditors under section 341(a) of this title. Creditors, any indenture trustee, or any trustee or examiner in the case may examine the debtor.

Rule of Bankruptcy Procedure 205 provides:

**Rule 205. Examination**

(a) Examination on Application. Upon application of any party in interest, the court may order the examination of any person. The application shall be in writing unless made during a hearing or examination or unless a local rule otherwise provides.

(b) Examination of Bankrupt at First Meeting. At the first meeting of creditors, the court shall publicly examine the bankrupt or cause him to be examined and may permit any party in interest to examine the bankrupt.

(c) Bankruptcy Judge to Preside. The bankruptcy judge shall preside at any examination under subdivision (b) of this rule.

(d) Scope of Examination. The examination under subdivisions (a) and (b) of this rule may relate only to the acts, conduct, or property of the bankrupt, or to any matter which may affect the administration of the bankrupt's estate, or to his right to discharge. The examination of a spouse under subdivisions (a) and (b) of this rule shall be subject to the provisos of § 21a of the Act.

(e) Compelling Attendance for Examination and Production of Documentary Evidence. The attendance of any person for examination and the production of documentary evidence may be compelled in accordance with the provisions of Rule 916 by the use of a subpoena for a hearing or trial.

(f) Place of Examination of Bankrupt. Without issuing a subpoena, the court may for cause shown and on such terms as it may impose order the bankrupt to be examined under subdivision (a) of this rule at any place it designates, whether within or without the district wherein the case is pending.

(g) Mileage. A person other than a bankrupt shall not be required to attend as a witness before a bankruptcy judge unless his lawful mileage and fee for one day's attendance shall be first tendered to him. If the bankrupt resides over 100 miles from the place of examination when he is required to appear for an examination under subdivision (a) of this rule, he shall be tendered mileage allowed by law to a witness for any distance over 100 miles from his residence at the date of bankruptcy or his residence at the time he is required to appear for such examination, whichever is the lesser.

**5.** The "conditions" of a section 341 creditors' meeting are as follows: A member of the staff of the clerk of the bankruptcy court attends the creditors' meeting. No official court reporter is present. The staff member does, however, make a tape recording of the meeting. These recordings are kept on file for approximately six months. If any party desires a transcript of the recording, a transcript is provided at the requesting party's expense.

the latter would involve some cost to him.[6] As the appellee points out, with the exception of mileage reimbursement, neither examination involves any cost to the creditor unless the creditor requests a transcript of the testimony. If any party orders a transcript, that party must pay for it; this is true in the case of any proceeding or deposition. See Nebraska Local Bankruptcy Rule 6 (1981) (providing for fees for transcripts).

Rule of Bankruptcy Procedure 205(g) requires that the party requesting an examination pay mileage to any witness other than the bankrupt. Since Carlson only sought to examine the bankrupt, that provision had no effect on him. The same rule requires the payment of a mileage allowance to the bankrupt, but only if he resides over 100 miles from the designated place of examination. Carlson never states how much he expected to be required to pay Boucher for mileage, so it is impossible to determine what actual prejudice he would have suffered, if any at all. Of course, Carlson would have to bear the expenses for his own attendance, for either a creditors' meeting or an examination of the debtor.

■ The scope of an examination is the same under Rule 205 as it is under section 343. In fact, Rule of Bankruptcy Procedure 205(d) governs the scope of a section 343 examination.

§ 343. *Examination of the debtor*

This section, derived from section 21a of the Bankruptcy Act, requires the debtor to appear at the meeting of creditors and submit to examination under oath. The purpose of the examination is to enable creditors and the trustee to determine if assets have improperly been disposed of or concealed or if there are grounds for objection to discharge. *The scope of the examination under this section will be governed by the Rules of Bankruptcy Procedure, as it is today. See rules 205(d),* 10–213(c) and 11–26. It is expected that the scope prescribed by

these rules for liquidation cases, that is, "only the debtor's acts, conduct, or property, or any matter that may affect the administration of the estate, or the debtor's right to discharge" will remain substantially unchanged.

S.REP. NO. 95–989, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.CODE CONG. & AD. NEWS 5787, 5829 (emphasis supplied).

[2] In sustaining the bankruptcy court's actions, the district court stated that the court could find no authority mandating the reopening of a first meeting of creditors. We agree. We are aware of only one case discussing the bankruptcy judge's authority to reopen the first meeting of the creditors. In *Matter of Mission Carpet Mills, Inc.,* 10 B.R. 494 (Bkrtcy. 9th Cir.1981), the court held that a bankruptcy judge had the authority to reopen the section 341 creditors' meeting for the limited purpose of allowing the second largest creditor to file a new proof of claim and/or power of attorney and to thereby cast its vote for the permanent trustee. That case differs from the one sub judice in that here, Carlson sought only an examination of the debtor. He has not alleged any circumstances necessitating such an unusual action by the court.

■ The appellee also notes that Carlson could have requested that the court call a special meeting of the creditors, pursuant to Rule of Bankruptcy Procedure 204(b), which provides:

**Rule 204. Meetings of Creditors**

\* \* \* \* \* \*

(b) Special Meetings. The court may call a special meeting of creditors on application or on its own initiative.

Carlson asserts in his reply brief that the court "obviously" should have ordered a special meeting on its own initiative. There is no authority to support the proposition that the bankruptcy court is compelled to take extraordinary actions to cure counsel's oversights. In fact, we find it only logical that the court did not order a special credi-

---

**6.** When a party conducts an examination under Rule 205, there is no court personnel involved. Only the parties to the bankruptcy proceeding are present. If either party wants a recording or transcript of the meeting, that party must make the necessary arrangements.

tors' meeting, since Carlson wanted to examine the debtor only and not the other creditors. In sum, under the rules then in effect, the court followed the only procedure available to allow the examination. Appellant has not presented any authority supporting his argument regarding reopening the creditors' meeting, nor has he presented any convincing explanation for his failure to examine Boucher after the court ordered the examination.

B. Extension of time for objection to discharge.

▮▮▮ The Bouchers filed this Chapter 7 petition on May 3, 1982. Carlson learned of the filing on July 20. The deadline for objecting to discharge was set for August 24, 1982. On August 13, Carlson filed a motion for an extension of time in which to file objection to discharge pursuant to Rule of Bankruptcy Procedure 404. The court denied the motion on August 27.[7] Under Rule of Bankruptcy Procedure 404(c), the grant of an extension is a matter within the discretion of the bankruptcy judge. *In Re Breining,* 6 B.R. 837 (S.D.N.Y.1980); *Keenan v. Builders Appliances,* 384 F.Supp. 14 (E.D.Wis.1974); Rules Bankr.Proc. 404(c), 906(b), 11 U.S.C.

▮▮ In view of all the circumstances surrounding this case, particularly Carlson's refusal to comply with the directions of the bankruptcy court, we hold that the court did not abuse its discretion in denying the request for an extension.

Accordingly, we affirm the order of the district court.

▮▮▮▮▮

---

**7.** An attorney has no right to rely on a motion for extension of time to take the place of an objection to discharge. A protective objection should have been filed on or prior to August 24, 1982.