**In the Matter of Arthur JAMES, Gwenivear James, Debtors.**

**Bankruptcy No. N95–10253–WHD.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Oct. 2, 1995.

Craig ·B. Lefkoff, of counsel, Goodman, Hudnall, Cohn & Abrams, P.C., Atlanta, Georgia, for Gary Stern, Inc. Pension Trust.

Jeffrey C. Renz, Rubin Law Offices, P.C., Stone Mountain, Georgia, for debtor.

## *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on a Motion to Extend Time for Filing Complaint to Determine Dischargeability of Debt presented by Gary Stern, Inc. Pension Trust (hereinafter "Stern"). Arthur and Gwenivear James (hereinafter "the Debtors") have opposed this Motion, arguing that no cause exists for granting Stern this type of extension. The issues involved herein constitute a core proceeding, *see* 28 U.S.C. § 157(b)(2)(F), and the Court will dispose of them in accordance with the following reasoning.

### DISCUSSION

On January 31, 1995, the Debtors commenced their present bankruptcy case by filing a petition under Chapter 7 of the Bankruptcy Code. As one of the Debtors' judgment creditors, Stern received notice of this filing from the clerk's office on February 4, 1995. A Meeting of Creditors ultimately was scheduled for March 21, 1995. Additionally, the Court set May 20, 1995, as the bar date for filing complaints to determine dischargeability or objections to discharge. Prior to the passage of that bar date, however, Stern filed its present Motion to Extend Time pursuant to Federal Rule of Bankruptcy Procedure 4004(b).

In support of its motion, Stern argues that, despite its efforts to research the matter, it will need additional time to untangle the circumstances of this case and thereby ascertain the viability of a section 523 and/or section 727 complaint. By contrast, however, the Debtors argue that Stern's need for additional time arises, not from complex circumstances, but from its own lack of diligence in researching the facts and issues involved. To that end, the Debtors point out that Stern did not attend the Creditors Meeting and that Stern did not contact them until just

before the Court's hearing on the Motion to Extend Time. In essence, therefore, the Debtors argue that Stern should not receive an extension because it has not put forth a good faith effort to pursue the matter in a timely fashion, i.e., that Stern has failed to exercise "due diligence."

## I. The Standard for Extending Time Under Rules 4004(b) and 4007(c).

Federal Rule of Bankruptcy Procedure 4004(b) provides for the extension of time to file dischargeability objections by stating:

> On motion of a party in interest, after hearing on notice, the court may extend for cause the time for filing a complaint objecting to discharge. The motion shall be made before such time has expired.

FED.R.BANKR.P. 4004(b). Similarly, Fed. R.Bankr.P. 4007(c) provides:

> A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

FED.R.BANKR.R. 4007(c). By allowing time extensions under a "for cause" standard, these Rules deviate from their predecessor, which allowed such extensions of time under an "excusable neglect" standard. *See* FED. R.BANKR.P. 404(c) (repealed Aug. 1, 1983). Despite the insertion of this new standard, however, the Rules fail to provide any direction as to exactly what should constitute "cause" under Rules 4004(b) and 4007(c). *In re Knobel,* 54 B.R. 458, 460–61 (Bankr.D.Col. 1985).

Indeed, for want of an alternative, many courts appear to have adopted the same evidentiary factors which once governed application of the "excusable neglect" standard, as factors to guide them in evaluating the presence of "cause." *See id.; In re Sherf,* 135 B.R. 810, 814 (Bankr.S.D.Tex.

1991); *Chase Manhattan Bank, N.A. v. Sturgis (In re Sturgis),* 46 B.R. 360, 365 (Bankr. W.D.Okla.1985). Among those borrowed considerations of "excusable neglect," such courts look at: (1) the adequacy of the notice provided; (2) the source of the delay and the sophistication of the creditor; (3) the prejudice, if any, that will inure to the debtor should the objection be allowed; (4) the resultant burden upon efficient court administration; (5) whether the creditor acted in good faith; and (6) whether clients should be penalized for the mistakes of their counsel. *See Fasson v. Magouirk (In re Magouirk),* 693 F.2d 948, 951 (9th Cir.1982); *see also Mfrs. Hanover Trust Co. v. Horvath (In re Horvath),* 20 B.R. 962, 966–67 (Bankr. S.D.N.Y.1982). Ultimately, however, courts appear to define 4004(b) and 4007(c)'s "for cause" standard by reference to that term's general legal application and the policy behind the rules themselves. As a matter of custom, therefore, courts conclude that what constitutes "cause" rests within the complete discretion of the bankruptcy court. *See Sherf,* 135 B.R. at 815; *Knobel,* 54 B.R. at 460; *Sturgis,* 46 B.R. at 362. Also, courts seem unified in the view that the term "for cause" should receive a liberal construction. *Schunck v. Santos (In re Santos),* 112 B.R. 1001, 1007 (B.A.P. 9th Cir.1990); *Wenhope Ass'n v. Plantation Manor Restaurant of Houma (In re Plantation Manor Restaurant of Houma),* 45 B.R. 229, 232 n. 4 (E.D. & W.D.Ark.1984); *In re Kellogg,* 41 B.R. 836, 838 (Bankr.W.D.Okla.1984); *Horvath,* 20 B.R. at 965. Notwithstanding that fact, however, a creditor must exhibit some minimum degree of due diligence prior to seeking such an extension, and the Court should not allow the motion to serve as license for a baseless "fishing expedition." *In re Leary,* 185 B.R. 405, 406 (Bankr.D.Mass.1995).

## II. The Existence of "Special Circumstances".

The application of the aforementioned principles appears to have generated one consistent theme: "special circumstances" may justify an extension of time to file a dischargeability complaint. *See In re Riso,* 57 B.R. 789, 793 (D.N.H.1986) ("based

on the facts of this case, this court believes that an injustice would occur if [the creditor] were not allowed to file his objection"); *see also In re Parker*, 186 B.R. 208, 210 (Bankr. E.D.Va.1995); *Sherf*, 135 B.R. at 815; *In re Hershkovitz*, 101 B.R. 816, 819 (Bankr. N.D.Ga.1989) (Kahn, B.J.) (relying upon the court's equitable powers under 11 U.S.C. § 105 to allow extended time). Chief among this strain of validating circumstances, courts find that the presence of complex issues or numerous parties will justify an extension of time. *Leary*, 185 B.R. at 406; *Kellogg*, 41 B.R. at 838; *Sturgis* 46 B.R. at 364. Accordingly, the Court finds it appropriate to focus its analysis upon the particular circumstances of this case and the issues implicated therein.

■ From its pleadings on this Motion, Stern appears to have a fraud theory in mind as its basis for objecting to the Debtors' discharge. It has become a matter of common knowledge that one who pursues a theory of fraud takes on one of the most difficult evidentiary burdens to be found in the legal arena. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 245, 108 S.Ct. 978, 990, 99 L.Ed.2d 194 (1988); *Wilson v. S & L Acquisition Co., L.P.*, 940 F.2d 1429, 1440 (11th Cir.1991). Consequently, the task of evaluating a potential fraud claim presents a uniquely onerous task. *See id.* Under normal circumstances, however, the Court does not believe the mere fact that the contemplated dischargeability action grounds itself in fraud theory should present sufficient justification for an extension. Rather, some more unique circumstance must exist to further complicate the task before the creditor.

■ Here, such a factor exists in the particular facts of this controversy. Specifically, the gravamen of Stern's contemplated action involves an alleged pattern by the Debtors of using several different social se-

curity numbers to apply for credit.[1] The Court finds it clear that such a pattern of activity by the Debtors, in fact, would substantially increase the investigative burden placed upon a prospective creditor. Indeed, such an act of identity concealment has but one logical product—to expressly make it more difficult for anyone to discover the true sum of an individual's activities. The Court, therefore, must conclude that this creditor bears the burden of unique circumstances which warrant an extension of time in its favor.[2]

### III. Consequent Burden to the Debtor and the Court.

■ As previously noted, courts also will look to resultant burden upon the debtor in evaluating such a motion to extend time. *See Fasson*, 693 F.2d at 951; *see also Horvath*, 20 B.R. at 966–67. Having carefully weighed this consideration, however, the Court concludes that granting Stern's motion would cause no such additional burden to the Debtors. Here, another creditor already has commenced an adversary proceeding pursuant to sections 523 and 727 in an attempt to question dischargeability. *See Fairburn Banking Co. v. James*, No. 95–1029A (Bankr. N.D.Ga.1995). Given the pendency of that proceeding, the Court finds it clear that extending Stern additional time in which to file such a complaint would burden the Debtors no further. *Sturgis*, 46 B.R. at 364 (in light of other pending adversary proceeding, debtor not prejudiced by extension). As such, this factor also favors granting Stern's motion for additional time.

■ Similarly, judges evaluating a Rule 4004(b) motion should take into consideration the consequent burden to the Court itself. *Fasson*, 693 F.2d at 951; *Horvath*, 20

---

1. Stern alleges that Mr. James has used at least three social security numbers, 256–74–0111, 257–70–0380 and 246–82–3392, in the course of past bankruptcy filings and loan applications.

2. The Debtors place great emphasis upon the fact that Stern did not attend the Creditors Meeting and did not contact them until the morning of the Court's June 23, 1995, hearing on this Motion. The Court agrees that the degree of pre-motion effort expended by such a movant should

factor heavily into the motion's evaluation. *Leary*, 185 B.R. at 406. Nonetheless, the Court believes that a creditor may exhibit the necessary degree of diligence without having exhausted all conceivable sources of investigation. By definition, Rule 4004(b) movants are those who have stones left yet unturned. Furthermore, given the nature of the situation, the Court finds it reasonable for Stern to have concluded that contact with the Debtor would produce little helpful information.

B.R. at 966–67. Again, however, the pendency of a parallel dischargeability proceeding serves to discount any such concerns from the perspective of the Court. To the extent that the Court already has before it a challenge to discharge in this case, no substantially increased burden will result from allowing Stern additional time in which to formulate a complaint. *Sturgis,* 46 B.R. at 364.

### CONCLUSION

Due to the unique circumstances of this case, the Court finds it proper to extend Gary Stern, Inc. Pension Trust additional time in which to investigate its potential challenge to dischargeability. Thus, it hereby is **ORDERED** that Stern's Motion to Extend Time for Filing Complaint to Determine Dischargeability is **GRANTED.** Stern shall have thirty (30) days from this date in which to file any such complaint which it deems proper.

**IT IS SO ORDERED.**