**In re Victor A. DESIDERIO, Debtor.**

**Bankruptcy No. 97–10453DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

June 12, 1997.

Michael J. Rutenberg, Philadelphia, PA, for Debtor.

Nancy J. Flickstein, Buchanan Ingersoll, Philadelphia, PA, for Wausau Entities.

Christine C. Shubert, Tabernacle, NJ, Trustee.

Frederic Baker, Assistant U.S. Trustee, Philadelphia, PA, U.S. Trustee.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

The current controversy involves a creditor's timely motion for an extension of time to file a complaint challenging the Debtor's discharge in this bankruptcy case and the dischargeability of its particular debt. We believe that the "cause" required to prevail on such a motion must include a showing of a reasonable degree of "due diligence" on the part of the creditor in utilizing tools available to investigate such a claim. Finding such "due diligence" absent here, the motion is denied.

### B. PROCEDURAL AND FACTUAL HISTORY

Prior to any filings relevant to the matter at issue in this court, Wausau Business Insurance Company, Employers Insurance of Wausau, and Wausau Underwriters Insurance Company ("Wausau") filed a complaint against Victor Agency, Inc. ("Victor") in the Court of Common Pleas of Bucks County, PA. ("the CCP") alleging breach of contract, breach of fiduciary duty, and conversion. As a result of Victor's failure to answer the complaint, a default judgment was entered in favor of Wausau and against it in the amount of $81,003.32 on October 31, 1996.

Subsequently, on January 13, 1997, VICTOR A. DESIDERIO ("the Debtor"), formerly the President of Victor, filed a voluntary individual bankruptcy petition under Chapter 7 of the Bankruptcy Code. Included among the Debtor's list of unsecured creditors was Wausau, referencing Wausau's judgment entered against Victor in the amount of $81,003.32, although the claim was listed as disputed. Wausau thus admittedly

received notice of the Debtor's bankruptcy filing in early February 1997, but did not appear at the first meeting of creditors in that case which was held on February 21, 1997.

Wausau did serve a subpoena on Mellon Bank ("Mellon"), which serviced Victor's account, on March 26, 1997, seeking to obtain Victor's banking records. Wausau alleges that these records could establish that there had been a misappropriation of Victor's funds on the part of the Debtor. However, Wausau was unable to obtain these records which it sought from Mellon prior to the April 22, 1997, deadline for filing a complaint objecting to the Debtor's discharge or the dischargeability of its debt. Therefore, on April 14, 1997, Wausau filed the motion before us, requesting an extension of time in which to conduct further discovery and to determine whether the debt should be discharged. Further, on April 28 and April 29, 1997, Wausau served subpoenas on Victor and the Debtor, respectively, in the CCP. However, because of a previous commitment of the Debtor's counsel and at his request, the depositions, scheduled on May 9, 1997, were postponed.

■ The only witness to testify at a hearing of May 13, 1997, on the motion was Andrew W. Allison, Esquire, a litigation associate of the firm which represented Wausau in the CCP and in this court. Allison testified that, after being notified that Mellon's records were unavailable, no further discovery was conducted until the filings of the subpoenas, which were filed subsequent to the filing of the motion before us. Thus, the bases of Wausau's request lies solely upon its contentions that the Debtor may have used Victor's funds for personal use and that it has not yet obtained sufficient evidence to prove or disprove its claim. Wausau further notes that its suspicions arose principally because the Debtor included Wausau as a creditor on his Schedules, and thus sought to discharge its claims against him. On his part the Debtor's counsel represented that he is now prepared to delete Wausau as a creditor

from his Schedules.[1]

## C. DISCUSSION

The standards for determining whether a creditor's timely request for an extension of time to file a complaint objecting to a debtor's discharge or the dischargeability of a particular debt should be granted or denied are not clearly set forth in the applicable Rules. Both Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 4004(b) (referencing complaints challenging the discharge) and F.R.B.P. 4007(c) (referencing complaints challenging dischargeability) provide only that the time deadlines may be extended "for cause," the only other stipulation being that "[t]he motion shall be made before such time has expired." We further note that F.R.B.P. 9006(b)(2), which allows certain extensions beyond the periods specified in the Rules as the result of "excusable neglect" does not, by its terms, apply to extensions to file discharge or dischargeability complaints. F.R.B.P. 9006(b)(2) allows extensions under F.R.B.P. 4004(a)[2] and 4007(c) "only to the extent and under the conditions stated in those rules." F.R.B.P. 9006(c)(2) states that "[t]he court may not reduce the time for

taking action" under F.R.B.P. 4004(a)[2] or F.R.B.P. 4007(c)[3].

Wausau first argues that extensions should be "liberally granted," citing *Brown v. Naccari,* 160 B.R. 784, 786 (E.D.La.1993); *In re Aucoin,* 150 B.R. 644 (E.D.La.1993) *appeal dismissed,* 35 F.3d 167 (5th Cir.1994); *In re Knobel,* 54 B.R. 458, 460–61 (Bankr.D.Colo. 1985); *In re Sturgis,* 46 B.R. 360, 365 (Bankr.W.D.Okla.1985); and *In re Kellogg,* 41 B.R. 836, 838 (Bankr.W.D.Okla.1984), in support. It further contends that *In re James,* 187 B.R. 395 (Bankr.N.D.Ga.1995); and *Sturgis, supra,* support the notion that the pendency of another nondischargeability complaint against the Debtor should work in favor of the motion, since the instant complaint will not delay a case otherwise ready to be closed. Another creditor of the Debtor, Pennsylvania Manufacturers Association ("PMA") has filed a nondischargeability complaint against the Debtor, which is now scheduled for trial on August 7, 1997. Finally, Wausau suggests that a creditor need exhibit no more than "some minimum degree of due diligence" in order to succeed in seeking an objection, citing *In re Davis,* 195 B.R. 422, 424 (Bankr.W.D.Mo.1996); *James, su-*

---

1. This proposed action of the Debtor appears not only gratuitous, but also meaningless and improper. It is doubtful that the Debtor wishes us to construe a deletion of Wausau as a creditor as an agreement that there should be no discharge of any debt of the Debtor to Wausau. If it were, the Debtor might as well stipulate to nondischargeability of this debt, which is inconsistent with the Debtor's contest of Wausau's complaint raising such a claim or this motion. Furthermore, a debtor has a duty to list all of his known potential creditors on the Schedules. *See In re Katz,* 203 B.R. 227, 234 (Bankr.E.D.Pa.1996). Deletion of a problematic creditor is grossly improper. *Id.*

2. We note that the proper reference in F.R.B.P. 9006(b)(2) and F.R.B.P. 9006(c)(2) should apparently be to F.R.B.P. 4004(b) rather than to F.R.B.P. 4004(a). F.R.B.P. 4004(a) refers to the time for filing complaints challenging discharges generally, but not extensions; F.R.B.P. 4004(b) refers to extensions. By way of comparison, the general rule pertaining to the time to file dischargeability complaints is F.R.B.P. 4007(b), and F.R.B.P. 4007(c) relates to extensions. F.R.B.P. 9006(b)(2) and 9006(c)(2) reference F.R.C.P. 4007(c). We must confess, however, that we can perceive no other reason for referencing F.R.B.P.

4004(a) except to comment on when extensions are appropriate.

3. A split of authority has developed regarding whether a request for an extension which, unlike the instant motion, is not made before the deadline has expired may be entertained, under any circumstance. One line of cases holds that the deadlines are "jurisdictional" and cannot be extended pursuant to an untimely motion. *See, e.g., In re Poskanzer,* 146 B.R. 125, 131 (D.N.J. 1992); *In re Thomas,* 203 B.R. 64, 68–70 (Bankr. E.D.Tex.1996); and *In re Biederman,* 165 B.R. 783, 788 (Bankr.D.N.J.1994). Other cases, apparently the majority of appellate decisions, conclude that these deadlines *can* be extended when issues of waiver, estoppel, and equitable tolling can be applied. *See In re Benedict,* 90 F.3d 50, 54 (2nd Cir.1996); *In re Themy,* 6 F.3d 688, 690 (10th Cir.1993); and *In re Kennerley,* 995 F.2d 145, 148 (9th Cir.1993).

Without resolving the issue of whether the deadlines are jurisdictional or not, we note that the line of cases refusing to allow untimely extension requests appear easier to square with the restrictive language of F.R.B.P. 9006(b)(2) and 9006(c)(2). *See In re Chalasani,* 92 F.3d 1300, 1312 (2d Cir.1996).

*pra* ; and *In re Schultz,* 134 B.R. 604 (Bankr. E.D.Mich.1991).

This court considered the standards for F.R.B.P. 4004(b) motions in *In re Wilson,* 1994 WL 282964, at *1 (Bankr.E.D.Pa. June 17, 1994). Noting that an apparent split had developed in the caselaw regarding the establishment of the standards for deciding such motions, we stated, at *id.,* that

> [t]he two standards for granting extension motions under Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 4004(b), in reference to complaints for discharge, which have developed are thusly described in *In re Knobel,* 54 B.R. 458, 461 (Bankr.D.Colo. 1985):
>
> > "The court in *In re Kellogg,* 41 B.R. 836 (Bankr.W.D.Okla.1984) ruled that an 'extension should be granted liberally absent a clear showing of bad faith.' 41 B.R. 838. Other courts still use two of the factors considered under the excusable neglect standards: (1) whether granting the delay will prejudice the debtor and (2) the length of the delay and its impact on efficient court administration. *In re Sturgis,* 46 B.R. 360 (Bankr.W.D.Okla.1985). *In re Magouirk,* 693 F.2d 948 (9th Cir.1982)."

*See also In re Aucoin,* 150 B.R. 644, 648 (E.D.La.1993) (applying factors considered in second test); and *In re Halliwell,* 130 B.R. 508, 509 (Bankr.S.D.Ohio 1991) (extension allowed because debtor failed to provide adequate information).

However, some courts, in denying motions to extend under F.R.B.P. 4004(b), have focused upon the movants' failure to act promptly in investigating the debtors' circumstances. See *In re Dekelata,* 149 B.R. 115 (Bankr.E.D.Mich.1993); and *In re Littell,* 58 B.R. 937 (Bankr.S.D.Tex. 1986).

We proceeded to allow a brief extension to the trustee-movant in *Wilson* to object to the debtor's discharge or his claims of exemptions because the debtor had not explained his failure to file any tax returns for the past four years nor explain his involvement with a probation officer, which was highly suggestive of criminal behavior.

The Debtor emphasizes several cases where motions for extensions were denied because the moving creditor failed to exercise due diligence in investigating the debtors' transactions and affairs prior to the established bar date, notably *In re Farhid,* 171 B.R. 94 (N.D.Cal.1994); and *In re Mendelsohn,* 202 B.R. 831 (Bankr.S.D.N.Y.1996). The *Farhid* case is particularly noteworthy because Wausau cited this case in its motion. Also of special note is the fact that *Farhid* cites a case from this jurisdiction in support of the proposition that the creditor must prove that it acted diligently to obtain facts relevant to pertinent claims prior to the bar date in order to succeed in an extension motion, *In re Young,* 162 F. 912 (E.D.Pa. 1908), which cites in turn *In re Grant,* 135 F. 889 (E.D.Pa.1905); and *In re Ginsburg,* 130 F. 627 (E.D.Pa.1904). We note, however, that these local cases are rather dated and were decided under the differently-worded Bankruptcy Act.

Wausau refrains from citing *Farhid* in its post-trial brief. This is perhaps explained by the fact that the *Farhid* result turned on the failure of the creditor to attend the debtor's meeting of creditors or to seek to take a F.R.B.P. 2004 examination of the debtor as evidence of lack of due diligence. The same can be said of Wausau here.

■ It appears to us that the emerging standard in this area is away from the more liberal standard and towards requiring the creditor to establish at least a reasonable degree of due diligence to be accorded an extension. This conclusion is supported by the express provisions in F.R.B.P. 9006(b)(2) and (c)(2) that "excusable neglect" is not an element of "cause," for purposes of F.R.B.P. 4004(b) and 4007(c). These Rules require something more, which we believe is a showing of a reasonable degree of due diligence by the creditor, or the presence of some other unusual circumstances justifying an extension.

The conclusion that the deadlines for filing discharge/dischargeability complaints should be strictly construed, despite the short "limitation" period of 60 days after the scheduling of the meeting of creditors, is also supported by the Supreme Court's decision in *Taylor v.*

*Freeland & Kronz,* 503 U.S. 638, 643–45, 112 S.Ct. 1644, 1648–49, 118 L.Ed.2d 280 (1992). There, the court strictly construed the deadline of 30 days after the meeting of creditors is conducted for filing objections to a debtor's claimed exemptions. *Id.* As we noted in *Wilson,* extensions for the filing of exemption objections can be extended, *see* F.R.B.P. 4003(b), although we therein suggested that the standards for both types of extension requests should be the same. 1994 WL 282964, at *1. Thus, the *Taylor* holding that any right to an extension must be strictly construed should carry over to analysis of discharge/dischargeability extensions.

The cases noted by Wausau do not contradict this principle. Most of them involved matters which the courts at issue found complex, justifying the creditors' requests for additional time despite reasonable diligence on their part. *See Brown, supra,* 160 B.R. at 785–86; *Aucoin, supra,* 150 B.R. at 648; *James, supra,* 187 B.R. at 398; *Sturgis, supra,* 46 B.R. at 364–65; and *Kellogg, supra,* 41 B.R. at 838. *Knobel, supra,* 54 B.R. at 461, involved a situation where ongoing matters in other forums were seen as likely to resolve many of the issues before the court. In *Schultz, supra,* 134 B.R. at 605–06, the creditor commenced a F.R.B.P. 2004 examination shortly before the deadline expired and then was refused an opportunity to complete the examination by the debtor. In *Davis, supra,* the court denied the motion for an extension.

■ We do not agree with Wausau's contention that the mere pendency of other proceedings challenging the Debtor's discharge or dischargeability should be a significant factor. In *James, supra,* 187 B.R. at 398; and *Sturgis, supra,* 46 B.R. at 365, the respective courts indicated that the other pending proceedings were related to, or consolidated with, the matter involving the creditor seeking the extension. There is no indication here that the proceeding initiated by PMA has any relationship to Wausau's potential claims against the Debtor.

Turning to the instant facts, we begin by noting that Wausau's contention that any degree of due diligence was shown merely by its attempt to obtain Victor's bank records

from Mellon holds little merit. Although fully aware of the April 11, 1997, deadline to file motions objecting to dischargeability, the only action that was taken by Wausau prior to that deadline was its unsuccessful effort to obtain Mellon's records. When notified by Mellon that said records would be unavailable for some time, nothing further was done prior to the filing of this motion for an extension. Wausau's attempts to obtain discovery from the Debtor and Victor via subpoenas in the CCP were made after the dischargeability deadline. Therefore, we must conclude that Wausau failed to establish even a minimal amount of diligence which could possibly justify an extension under any standards.

In examining what was done as opposed to what could have been done, we find that Wausau easily could have attended the meeting of creditors or requested a 2004 examination of the Debtor or of Mellon's records prior to the deadline date. Thus, we believe that the Debtor should not suffer the delay and inconvenience that Wausau's request would most certainly entail. Although the adversary proceeding filed by PMA is indeed also pending, it is obviously a greater burden for the Debtor to defend one action than two, especially since this action, at least in the alternative, challenges the Debtor's entire bankruptcy discharge.

Many decisions, in addition to *Farhid, supra;* and *Mendelsohn, supra,* would obviously concur with this result on the instant record. *See, e.g., Dekelata, supra* (creditor delayed until eleven days before the expiration of the deadline to take a F.R.B.P. 2004 examination); and *Littell, supra. Cf. In re Boucher,* 728 F.2d 1152, 1156 (8th Cir.1984) (denial of extension within discretion of court; decision affirmed).

## D. CONCLUSION

For all of the foregoing reasons, Wausau's motion will be denied in the accompanying order.

### ORDER

AND NOW, this 12th day of June, 1997, after a hearing of May 13, 1997, on the Motion by Wausau Business Insurance Com-

pany, Employers Insurance of Wausau, and Wausau Underwriters Insurance Company for an Extension of Time to File a Complaint Objecting to Discharge and/or to the Dischargeability of a Debt ("the Motion") in the above-entitled case, and upon consideration of the parties' post-hearing submissions relevant thereto, it is hereby

ORDERED AND DECREED that the Motion is DENIED.