## FEDERAL PROVISION CO., Inc., v. ERSHOWSKY et al.

### No. 184.

Circuit Court of Appeals, Second Circuit.

Feb. 7, 1938.

Shaine & Weinrib, of New York City (Edward C. Weinrib and Edward J. Mallin, both of New York City, of counsel), for appellants.

Stein & Stein, of New York City (Samuel Stein, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

PER CURIAM.

This is an appeal by two bankrupts from an order denying their discharge. An involuntary petition was filed against them on June 9, 1936; they presented their application for discharge in December; two creditors opposed it; the issues were referred to a referee, who reported against them; the report was confirmed and they have appealed. The specifications of one of the creditors, the First Prize Provision Company, Inc., alleged a concealment of property with intent to defraud creditors, and failure to account satisfactorily for losses and deficiency of assets. The first specification was in two parts: First, the payment of a debt of $1,000 to one Barney Ershowsky, the bankrupts' father; and, second, the sale of a motortruck and a car and concealment of the proceeds. The specifications of the other creditor, the Federal Provision Company, were also in two parts; the concealment of the proceeds of a pledge of property made on the eve

of bankruptcy, and the failure to explain the loss and deficiency of assets. Although the referee appears to have supposed that only the specifications of the First Prize Provision Company were before him, his findings are applicable not only to them but to those of the Federal Provision Company; both had appeared before him and the evidence was taken upon both. Since the report was at most only advisory, when it came to the judge he was at liberty, and indeed in duty bound, to consider the evidence as a whole. From it the following conclusions might be drawn: The bankrupts had been doing a jobbing business in frozen meats; between May 14 and May 26, 1936, they bought a substantial quantity (the exact amount does not appear), which they stored in a warehouse and at once pledged for about $3,900. This money disappeared; their only explanation was that they paid it out to unspecified creditors. At about the same time—at the end of May—they sold their only truck and automobile; this money too disappeared, and their explanation is the same. Late in May or early in June they paid their father $1,000 upon a loan which he had made them in the preceding February; so far as can be seen, this had been a genuine loan and the payment, taken alone, was merely a preference. Some of the meat which they stored and pledged they had bought from the Federal Provision Company by falsely saying that they had a contract to supply some department or bureau of the government. They were arrested on June 2d for some crime whose nature does not appear, and the petition was filed on June 9th, as we have said.

The provision of section 14b, Bankr. Act, as amended by Act May 27, 1926, § 6, 11 U.S.C.A. § 32b, puts the burden of proof upon the bankrupt when the creditor has shown reasonable ground for the belief that the bankrupt has "committed" any of the "acts" which will bar his discharge. This was added in 1926, until when the creditor had the burden of proof throughout; at the same time the seventh objection was added—a failure satisfactorily to explain the loss or deficiency of the bankrupt's assets. The proviso does not fit very well upon that objection; it somewhat wrenches the words to speak of such a failure as the "commission" of an "act"; and it would not be unduly severe to make the grant of all discharges conditional upon such an explanation. After all, nobody is in better position to explain his losses than the bankrupt, and a discharge is a favor which ought to depend upon his utmost candor and co-operation. Be that as it may, in the case at bar, we are not forced to hold that insolvency alone compels the bankrupt to explain, for on any view the situation here disclosed demanded as much.

The evidence as a whole strongly suggests a deliberate scheme to defraud; certainly the concluding activities of the business were not in due course; and the bankrupts' conduct was not that of men who were merely bringing an honest but unsuccessful venture to an end. Being therefore called upon to explain, they gave no explanation worthy the name; it was nothing to the purpose to say that they had paid out to creditors the money they got hold of in these unusual ways; to be "satisfactory," their account should have told to what creditors they paid it; and when, in what amounts, and what were the debts; they should have said why they found it necessary to buy meats only to pledge them, and why they had to sell their necessary vehicles; in short, they should have done all that they failed to do.

The amendment of 1926 has revolutionized the procedure in discharge; the bankrupt may no longer remain inert, standing upon the infirmities of the evidence against him; once a prima facie case appears, the laboring oar passes to his hands and he must bring the boat to shore. It is he who has caused the loss, who has access to the facts, and who alone knows what the explanation is; let him make it, let him satisfy the court that it really explains. Else he will not be discharged. We cannot see how the judge, or any other impartial person, could think that these bankrupts had explained anything whatever.

Order affirmed.