In re Fimy ISHKHANIAN t/a
Fimy's Kitchen, Debtor.

LA BRIOCHE, INC., Plaintiff,

v.

Fimy ISHKHANIAN t/a Fimy's
Kitchen, Defendant.

Bankruptcy No. 96–19733DAS.
Adversary No. 97–0082DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

July 17, 1997.

946

Robert M. Kline, Philadelphia, PA, Presumed successor Attorney for Debtor.

Douglas H. Weiss, Philadelphia, PA, Former Attorney for Debtor. (Disbarred).

Jonathan J. Bart, Philadelphia, PA, for Plaintiff.

Andrew N. Schwartz, Shaman, Robin & Schwartz, P.C., Philadelphia, PA, Trustee.

Frederic Baker, Philadelphia, PA, Assistant U.S. Trustee.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

## A. INTRODUCTION

The instant proceeding involves a challenge by LA BRIOCHE, INC. ("the Plaintiff") to the discharge of FIMY ISHKHANIAN, t/a FIMY'S KITCHEN ("the Debtor") We conclude that the Plaintiff has not presented sufficient evidence to establish a denial of the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(5), mostly in light of the Debtor's credibility and the policy disfavoring denials of discharge. Furthermore, we hold that the Plaintiff has not properly attempted to amend its complaint to include any cause of action based on § 727(a)(4), and that, in any event, the said claim lacks merit.

## B. FACTUAL AND PROCEDURAL HISTORY

On October 10, 1996, the Debtor filed an individual voluntary petition under Chapter 7 of the Bankruptcy Code. The only significant event occurring as of the February 14, 1997, bar date to file complaints to oppose the Debtor's discharge or dischargeability of any particular debts was the Plaintiff's filing of the Complaint in this proceeding ("the Proceeding") on February 13, 1997, to which the Debtor filed an Answer on March 18, 1997. We note that the Trustee, on June 30, 1997, filed a notice to change this case from a no-asset to an asset case for reasons not presently clear to us. In light of this action, a status hearing in the main case is scheduled on July 24, 1997, in the accompanying Order.

The trial of the Proceeding was initially scheduled on April 1, 1997. On February 25, 1997, the Plaintiff commenced discovery by serving written interrogatories, requests for production of documents, and a notice of a March 27, 1997, deposition on the Debtor. On March 26, 1997, counsel filed a Stipulation extending the Debtor's time to respond to discovery until April 14, 1997; the date for the deposition on or before April 30, 1997; and the trial to a date later established as May 13, 1997. On May 13, 1997, a further continuance of the trial was requested, although no revision of the Stipulation regarding discovery was presented.

On May 14, 1997, we entered an order continuing the trial to the requested further date of June 10, 1997, although that order clearly provided that no further continuances would be granted. Unknown to the court, the Debtor's counsel encountered certain personal problems which rendered him unable to provide answers to the written discovery until June 2, 1997.[1] The Plaintiff, claimed to have not received notice of the final continuance until May 23, 1997, due to a change of its counsel's office address of which he failed to inform the court. The Plaintiff then filed, on Friday, June 6, 1997, four days before the scheduled trial, a motion to compel discovery and to preclude the Debtor

---

1. We note that the Debtor's counsel was disbarred from the practice of law in this Commonwealth on June 13, 1997, effective July 13, 1997.

from presenting a defense due to her failure to adequately respond to written discovery ("the Motion"). A deposition of the Debtor was apparently finally taken on June 6, 1997.

The Motion was listed on the trial date of June 10, 1997, which was the next available hearing date. The Motion was denied at that time because we found that it was untimely under the circumstances. Specifically, we believe the Plaintiff should have moved to compel responses to the written discovery sooner and that it obtained the deposition shortly before trial which it had sought. The trial was held on June 10, 1997, and the parties were accorded until June 20, 1997, to remit post-trial briefs, which were submitted in a timely fashion.

The facts were developed from the testimony of two witnesses, Roberta Wakim, the president of the Plaintiff, and the Debtor. In September 1994, the Debtor leased an area in Albrecht's Market, located on Montgomery Avenue in Narberth, Pennsylvania, and therein established a business selling Middle Eastern food products ("the Albrecht Business"). The Albrecht Business's trade name was registered as "Fimy's Kitchen," and the rent for the leased space was $1,800 monthly, plus utilities. The Debtor opened an account for the business at Mellon Bank ("Mellon").

At this time, the Plaintiff was operating a bakery and coffee shop business located about one mile down Montgomery Avenue in Bala Cynwyd, Pennsylvania ("the Bala Business"). The Plaintiff obtained a loan of $80,000, for which Wakim and her husband were personally liable, from Jefferson Bank ("Jefferson") to finance this business operation. Wakim testified that the set-up costs of this business were $290,000.

Sometime in 1995, the Debtor learned through a realtor that Wakim desired to sell the Bala Business. The Debtor expressed interest and made an offer to purchase the Bala Business. There is some dispute as to whether the Debtor reviewed the Plaintiff's financial records before she made the offer, as Wakim claimed, or whether the Debtor was not shown any financial data before making the offer, as the Debtor claimed. It is undisputed that the Debtor did not engage an accountant or other professional to perform due diligence of the Plaintiff's financial operations, nor did she appear to the court to possess the business sophistication to adequately do so herself.

Nevertheless, an Agreement of Sale ("the A/S") was entered into by both parties on November 1, 1995, in which the total purchase price for the Bala Business was $70,000. The terms of the sale provided that the Debtor was to pay $20,000 at the closing date and execute a Promissory Judgment Note ("the Note") in the amount of $50,000 in favor of the Plaintiff with interest at eight (8%) percent per annum and providing for 60 monthly payments of $1,013.82. The A/S listed the following assets to be sold: "furniture, fixtures, equipment, the trade name, inventory and the right to lease the premises, *all as described in Exhibit 'A'* which is attached hereto [but was not attached to the copy produced by the Plaintiff at trial] and made a part hereof." (emphasis added). The parties also entered into a General Security Agreement, whereby the Debtor pledged as security for the Note all furniture, fixtures, and equipment located at the Bala Business, and all cash and non-cash proceeds thereof.

The Debtor operated the Bala Business in essentially the same manner as she did the Albrecht Business. The Debtor employed the same business trade name as had been used for the Albrecht Business, "Fimy's Kitchen." In addition, the Debtor used her Mellon account for both the Albrecht and Bala Businesses.

On December 28, 1995, pursuant to a written Agreement of Sale executed by these parties, the Debtor allegedly sold the Albrecht Business to her father-in-law, Manuel Ishkhanian ("Manuel"), for $24,000. The Debtor claims also that inventory worth $441.60 was included in the sale. It is undisputed that the Debtor, at some point, transferred the realty lease for the Albrecht Business to Manuel. The Debtor did not inform the Plaintiff about the sale of the business. Later, when she filed her bankruptcy on October 10, 1996, the Debtor neglected to disclose the sale in response to a question in her Statement of Financial Affairs inquiring

about transfers of property one year before her bankruptcy filing.

The Debtor testified that she sold the Albrecht Business to Manuel because she needed the money, apparently to finance the operation of the Bala Business. The Debtor claims to have deposited the $24,000 in the Mellon business account, although she did not present any evidence which documented the transaction. These were among the documents sought by the Plaintiff in discovery but never received. The Debtor testified that she was unaware that the Plaintiff had requested this information until about a week before trial, and, upon learning of this request, she had attempted to obtain, but had not yet received, the necessary information from Mellon. She admitted failing to disclose the transfer of the Albrecht Business in her Schedules, indicating that she had not recalled that the transaction was within a year of her filing and was not aware that it had to be disclosed.

The Debtor asserts that Manuel took over the operation of the Albrecht Business as of December 1995, but admitted that she remains as the "manager" of the Business, and that Manuel continued to operate the business under the trade name "Fimy's Kitchen." Manuel did not personally register the Albrecht Business's trade name as "Fimy's Kitchen" until May 13, 1997.

As to the Bala Business, the Debtor continued operating it and making payments to the Plaintiff under the Note until June 1996. On August 19, 1996, the Debtor closed the Bala Business without prior notice to the Plaintiff, and allegedly donated all the food on location to a church.

After the Debtor's default, the Plaintiff, at the insistence of Jefferson, conducted an auction of the collateral on site on September 18, 1996, as opposed to attempting to re-sell the assets privately as a going concern. The net proceeds from the auction totaled $23,759.55. The Plaintiff claims that, after applying the net auction proceeds to the debt owed to it by the Debtor, the Debtor's remaining deficiency was $28,056.50 as of October 1, 1996.

A disputed factual issue arose as to whether the Debtor removed a certain commercial oven, worth approximately $4,000 to $5,000, from the Bala Business in derogation of the Plaintiff's rights. The Plaintiff claims that the oven was pledged as security on the A/S and was removed by Debtor to the Albrecht Business. Wakim later admitted, however, that the oven was not owned by the Plaintiff, but rather by a company owned by her husband. In addition, the oven was not included on a copy of Exhibit A to the A/S produced by the Debtor, although it did list all of other assets apparently included in the sale.

The Debtor, on her part, testified that all of the equipment and inventory remained at the Bala Business upon her closing same. Furthermore, the Debtor asserts that she has never seen nor used the oven, and, in any case, it was not a collateralized item in the A/S. There is no evidence that the oven is or ever was at the Albrecht Business location.

## C. DISCUSSION

Before discussing the specific § 727(a) claims alleged by the Plaintiff, we note that all the sections of § 727(a) must be construed liberally in favor of debtors. *See, e.g., Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir.1993); *In re Blanchard,* 201 B.R. 108, 120 (Bankr.E.D. Pa. 1996); *In re Staffieri,* 1994 WL 463978, at *2 (Bankr.E.D.Pa. Aug.23, 1994) *("Staffieri I"),* aff'd sub nom. *Obermayer, Rebmann, Maxwell & Hippel v. Staffieri,* 1995 WL 339019 (E.D.Pa. June 5, 1995) *("Staffieri II");* and *In re Cohen,* 142 B.R. 720, 725–26 (Bankr.E.D.Pa.1992) *("Cohen II")* ("the courts have consistently construed objections to discharge strictly against the objector and in favor of the debtor"). A denial of discharge is an "extreme step" that is not to be taken lightly. *See, e.g., Rosen, supra,* 996 F.2d at 1531; and *Blanchard, supra,* 201 B.R. at 120.

A plaintiff in an action under § 727(a) must now prove any grounds for denial of discharge by a "preponderance of the evidence" rather than by the more demanding "clear and convincing evidence" standard in light of *Grogan v. Garner,* 498 U.S. 279, 285–91, 111 S.Ct. 654, 658–61, 112 L.Ed.2d 755 (1991). *See, e.g., Blanchard, supra,* 201 B.R. at 114. However, the burden of proof of a cause of action supporting a

denial of a debtor's discharge clearly remains on the plaintiff. *See Staffieri I, supra,* 1994 WL 463978, at *3.

1. *THE PLAINTIFF HAS NOT PRESENTED SUFFICIENT EVIDENCE TO ESTABLISH THE REQUISITE INTENT BY THE DEBTOR TO HINDER, DELAY, OR DEFRAUD THE PLAINTIFF NECESSARY TO SUSTAIN A § 727(a)(2)(A) CLAIM.*

■ We first consider whether the Plaintiff can prevail on its § 727(a)(2)(A) claim. The relevant portion of § 727(a)(2)(A) states that

[t]he court shall grant the debtor a discharge, unless—

.    .    .    .    .

(2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate ..., has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition....

Section 727(a)(2) is directed towards actions of debtors seeking to transfer or conceal property from the trustee or creditors. *Blanchard, supra,* 201 B.R. at 120.

The Plaintiff alleges that the Debtor transferred the Albrecht Business to Manuel with the improper intention of defrauding the Plaintiff, evidenced by the allegedly inadequate consideration received by the Debtor for the transfer and other "badges of fraud." More specifically, in light of the allegedly scanty documentation of this transaction, the Plaintiff claims that the sale was a sham concocted to defraud the Plaintiff. Relevant to the Plaintiff's contention are the assertion of its inability to document the sale; the further fact that the Debtor did not file any income tax returns for 1995 or 1996; and Manuel's belated registration of the fictitious name on May 13, 1997, which the Plaintiff argues suggests that the sale in fact occurred, if at all, only recently. Furthermore, the Plaintiff claims that the Debtor, with intent to hinder or defraud the Plaintiff, transferred or removed the commercial oven

from the Bala Business which allegedly served as part of collateral for the Debtor's Note.

■ To establish a cause under § 727(a)(2)(A), a plaintiff is obliged to prove four elements:

(1) the Debtor transferred, removed, etc., property;

(2) the property belonged to the Debtor.

(3) the transfer, removal, etc., occurred within one year of the filing of the Debtor's bankruptcy petition; and

(4) the Debtor intended to hinder, delay or defraud a creditor.

*Cohen II, supra,* 142 B.R. at 725. *See also, e.g., In re Henderson,* 134 B.R. 147, 156 (Bankr.E.D.Pa.1991); and other cases cited by the foregoing.

As is typical in such cases, the first three elements are undisputed, except as to the oven, while the fourth element is hotly contested. For instance, the Debtor does not dispute that she transferred the Albrecht Business to Manuel on December 28, 1995.

■ However, the Debtor denies any contention that she removed or concealed the commercial oven at issue. We agree with the Debtor that the Plaintiff presented inadequate evidence to establish that the Debtor had removed such property. Not only did the Debtor consistently testify that she had never seen nor used the oven, but also the oven was not included on the otherwise very complete list of assets sold by the Plaintiff to the Debtor, *i.e.,* Exhibit A to the Agreement of Sale dated November 1, 1995, produced by the Debtor. Furthermore, Wakim testified at trial that the oven did not belong to the Plaintiff, but rather to a company owned by Wakim's husband. Thus, the Plaintiff admittedly has no standing to make a claim for the oven. *See, e.g., Sharp & Dohme, Inc. v. United States,* 144 F.2d 456, 458 (3d Cir. 1944); *Commonwealth, Game Comm'n v. Commonwealth, Dep't of Environmental Resources,* 521 Pa. 121, 127–28, 555 A.2d 812, 815–16 (1989); *Grant–Albert Co. v. Ferrari,* 35 Pa. D. & C. 484, 486–87 (Westmoreland Co. C.P.1939); and 3 STANDARD PA. PRAC.2d 33–37 (1994). Since the very first,

basic element of a § 727(a)(2) claim is not proven as to the oven, we will not discuss that issue further. Rather, we will confine ourselves to considering whether the transfer of the Albrecht Business violated § 727(a)(2).

As to the Albrecht Business transfer, the second element of the Plaintiff's § 727(a)(2) cause of action—that the transferred property formerly belonged to the Debtor—is undisputed. Likewise, the third element—that the Debtor's transfer of property occurred within one year of her bankruptcy filing—is also undisputed, as the Debtor sold the Albrecht Business in December 1995 and filed for bankruptcy in October 1996.

As to the final crucial element requiring intent by the Debtor to hinder, delay, or defraud a creditor, it is essential for the Plaintiff to prove *actual* intent by the Debtor to hinder, delay, or defraud creditors in making the transfer of the Albrecht Business to prevail in its § 727(a)(2) claim. *See Cohen II, supra* 142 B.R. at 728, citing *Henderson, supra,* 134 B.R. at 157. We note that a cause of action under § 727(a)(2) is difficult to sustain because it does require, *inter alia,* a showing of improper intent on the part of the debtor, as well as improper conduct. *See Blanchard, supra,* 201 B.R. at 120; *In re Cook,* 146 B.R. 934, 935–36 (Bankr.E.D.Pa. 1992); and *In re Trinsey,* 114 B.R. 86, 90 (Bankr.E.D.Pa.1990). As stated by the court in *In re Vail,* 1 B.R. 132, 134 (Bankr.E.D.Pa. 1979), quoting *In re Seperis,* 454 F.2d 195 (3rd Cir.1972); and *In re Pioch,* 235 F.2d 903 (3rd Cir.1956), " '[t]o bar the bankrupt's discharge there must be an actual fraudulent intent on the part of the bankrupt to hinder, delay or defraud his creditors and constructive intent is not sufficient; the reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural....' " Thus, it is the intent of the Debtor that governs any determination of fraud under § 727(a)(2).

The present case is somewhat factually analogous to *Blanchard, supra,* 201 B.R. at 112–13, where the plaintiffs asserted a § 727(a)(2)(A) cause of action arising from the fact that the debtors had sold certain equipment and retained the sale proceeds within a year of filing bankruptcy, in derogation of the plaintiffs' security interest. After crediting the debtors' testimony that they did not recall that the plaintiffs had a security interest in the equipment, *id.* at 113, this court stated that "[t]he mere failure of a debtor to turn over the proceeds obtained from the sale of property of a business to a secured creditor does not establish willfulness nor maliciousness." *Id.* at 117. We concluded that the plaintiffs were unable to prove that the debtors had sold the equipment with the deliberate intention of defrauding the plaintiffs. *Id.*

The case at bar is weaker than the *Blanchard* case, because (except for the oven claim, *but see* pages 950–951 *supra*), there is no contention that the Debtor converted the Plaintiff's property. The Plaintiff here was able to foreclose upon and sell its collateral. The Plaintiff's claim is based upon the Debtor's transfer of other, uncollateralized assets.

Furthermore, there is no compelling evidence that the Debtor acted with improper intent in transferring the Albrecht Business to Manuel. The Plaintiff relies heavily upon the fact that there is no documentation of the $24,000 consideration, or, alternatively, that $24,000 was inadequate consideration received by the Debtor for the sale of the Albrecht Business, to establish fraudulent intent on the part of the Debtor.

However, we find no evidence that these facts are so. The Plaintiff's principal argument—that no transfer took place at all, due to the lack of documentation—is not convincing. There *is* certain documentation, notably an Agreement of Sale, the lease transfer into Manuel's name, and Manuel's eventual fictitious name registry. Moreover, the Agreement of Sale for this transfer was dated shortly after the A/S in which the Debtor acquired the Bala Business was executed and long before the Debtor's financial difficulties with that Business arose. We found the Debtor to be a credible witness, though not a sophisticated businessperson. We credit her testimony that she did not document the transfer with Mellon's records because she was unaware of the Plaintiff's request that she do so in sufficient time to retrieve these records. It is apparent that most of the

responsibility for not conveying the Plaintiff's request for this information must be attributed to the personal problems of the Debtor's counsel. However, we continue to observe that the Plaintiff's counsel failed to act expeditiously to obtain this documentation as well.

With respect to the alleged inadequacy of the $24,000 sale price, assuming that the transaction was bona fide, there is no evidence whatsoever that the Albrecht Business was worth more. This consideration was not nominal, nor was it proven inadequate, nor did it involve a suspiciously round number. The parties' lack of business sophistication would explain the belated fictitious name registration amendment. It is of course possible that the Debtor was "playing dumb," but we saw no evidence of that.

The Plaintiff also attempts to rely on certain "badges of fraud" to establish the Debtor's fraudulent intent. The Plaintiff specifically references, in this regard, that the transfer was made to an insider within one year of bankruptcy, that the Debtor did not satisfy the Plaintiff's requests for document production, and that the Debtor failed to file federal income tax returns in either 1995 or 1996, a fact which she candidly admitted. This court, in *Cohen II, supra,* 142 B.R. at 728, set forth the following rather complete list of eleven distinct badges of fraud:

(1) lack or inadequacy of consideration;

(2) the family, friendship or close associate relationship between the parties;

(3) the retention of possession, benefit or use of the property in question, although title exists in another entity;

(4) the financial condition of the party sought to be charged both before and after the transaction in question;

(5) conveyance of all of the debtor's property;

(6) secrecy of the conveyance;

(7) existence of a trust or trust relationship between the debtor and the person to whom the property was conveyed;

(8) the existence or cumulative effect of a pattern of series of transactions or a course of conduct after the incurring debt, onset of financial difficulties, or pendency or threat of suit by creditors;

(9) the instrument affecting the transfer suspiciously states it is in fact bona fide;

(10) the debtor makes a voluntary gift to a family member; and

(11) the general chronology of events and transactions under inquiry.

A couple of these "badges" are evident in this case, notably the second and third "badges." However, we find that the eighth, ninth, tenth, and eleventh "badges" are absent, and that none of the others were proven. The cumulative effect of the "badges" proven—that the transfer was to a family member and the Debtor remained active in the Albrecht Business after its sale (although no evidence regarding her compensation before or after the transfer, and whether that changed, was elicited)—do not add up to very much.

The Plaintiff cites *In re St. Clair Clinic, Inc.,* 73 F.3d 362 (Table), 1996 WL 6531 (6th Cir.1996); *Rivers v. United States,* 178 B.R. 9, 11–12 (S.D.Ala.1994); and *In re Binkley,* 176 B.R. 260, 265 (Bankr.M.D.Fla.1994), to support the proposition that the Debtor's conduct was marked by sufficient "badges" of fraud. The first cite is to *St. Clair,* an unpublished decision any citation to which is "disfavored." In any event several badges were found present in the transfer there, including payment of the sum in issue without any consideration. 1996 WL 6531, at **2. Far fewer "badges" were proven here.

The other two cases discuss debtors' failures to file certain tax returns. We note that failing to file tax returns is not among the referenced *Cohen II* "badges." These cases were maintained against the Internal Revenue Service to attempt to have certain liabilities declared dischargeable under 11 U.S.C. § 523(a)(1). In the context of § 523(a)(1) particularly §§ 523(a)(1)(B), (C), the filing of a legitimate tax return is clearly relevant. The relevance is much less so when a tax claim is not at issue, as here.

We stated in Cohen II that the "badges" considered to be very significant are the "adequacy of consideration" and an extremely adverse aspect of the transfer upon the transferor's financial condition. 142 B.R. at 729. Neither of these badges are proven

here. While we recognize that requisite intent may be found where there is proof that the debtor "gratuitously transfers valuable property or transfers property for inadequate consideration," *Henderson, supra,* 134 B.R. at 157, we emphasize that the lack of fair consideration was not proven here, and that it is "merely one of many factors the court may consider in determining whether intent, if any, was actual rather than presumptive." *Vail, supra,* 1 B.R. at 134.

With respect to the effect of the transfer upon the Debtor's financial condition, we find the factual setting to be analogous to that in *Cohen II.* There, we stated that "[t]he greatest difficulty which we have with the Plaintiff's proof of the Debtor's improper intent in making the transfers is the absence of evidence that the Plaintiff was actually hindered or delayed in the collection of the Debtor's obligations to it by the Debtor's actions, or that the Debtor foresaw and hence intended that any hindrance or delay would transpire as a result of the transfer in issue." 142 B.R. at 729. The Debtor testified at trial, logically and credibly, that the reason she sold the Albrecht Business to Manuel was because she needed more money, presumably to run the Bala Business and pay the Plaintiff. Thus, in transferring the Albrecht Business, the Debtor's intent was to situate herself in a better financial state, *not* to hinder the Plaintiff's collection efforts by stripping herself of assets.

In sum, very few "badges" of fraud are evident to support the Plaintiff's otherwise less than convincing evidence of fraudulent intent. We thus conclude that the Plaintiff failed to satisfy the element of fraudulent intent required to establish a § 727(a)(2)(A) claim, and therefore that the Plaintiff cannot prevail on its § 727(a)(2)(A) claim against the Debtor.

2. *THE DEBTOR HAS PRESENTED SUFFICIENT EVIDENCE TO DEFEAT THE PLAINTIFF'S § 727(a)(5) CLAIM OF NONDISCHARGEABILITY BASED ON THE DEBTOR'S FAILURE TO EXPLAIN THE LOSS OF HER ASSETS.*

The Plaintiff's second objection to the Debtor's discharge is based on § 727(a)(5).

Section 727(a)(5) provides that a court will grant the debtor a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities. . . ." The Plaintiff claims that the Debtor failed to adequately explain the loss of the Albrecht Business assets, as well as the oven (which claim we disposed of at page 950 *supra* and, thus, should be denied her discharge under § 727(a)(5)).

At the outset, we note a distinction between the proof required for claims based on § 727(a)(5) as opposed to those based on § 727(a)(2). There is no requirement that a debtor act fraudulently or intentionally in order for a plaintiff to sustain objections to discharge based upon § 727(a)(5). See *Blanchard, supra,* 201 B.R. at 120; *Cook, supra,* 146 B.R. at 935; and *Trinsey, supra,* 114 B.R. at 91.

Nevertheless, although the duty of disclosure is a basic prerequisite to obtaining discharge in any bankruptcy, *Trinsey, supra,* 114 B.R. at 91, we conclude that the debtor need only provide *some* credible explanation of the loss or deficiency of assets to satisfy her requisite burden under § 727(a)(5). Moreover, the plaintiff in a § 727(a)(5) proceeding must introduce more than merely an allegation that the debtor has failed to explain losses, *e.g.,* the objector must produce some evidence of the disappearance of substantial assets or of an unusual transaction which disposed of assets. See *In re Somerville,* 73 B.R. 826 (Bankr.E.D.Pa. 1987).

Here, the Debtor produced evidence that she sold the Albrecht Business to Manuel in December 1995, which totally accounts for the "loss," or more appropriately, the transfer, of this asset. As discussed at pages 951–952 *supra,* the evidence in support of the sale transaction, while not as complete as it could be, is not insubstantial. We therefore conclude that the Debtor met the burden of satisfactorily explaining the loss of this asset.

It is perhaps instructive to contrast the Debtor's explanation to that of the respective debtors in *Cook, supra,* 146 B.R. at 940–43; and *Trinsey, supra,* 114 B.R. at 91–92, which involved § 727(a)(5) claims. The debtor in *Cook* failed to explain the loss of $676,000 within two years. 146 B.R. at 942–43. The *Trinsey* debtor, 114 B.R. at 91–92, failed to offer any logical explanation for an expenditure of $71,000 in an 11–month period. Both debtors provided explanations, but they either attempted to scapegoat, 146 B.R. at 942, or made evasive responses, 114 B.R. at 91, which the court refused to credit. The Debtor in the present case, by contrast, presented a reasonable and straightforward explanation for the loss of the Albrecht Business, *i.e.,* she sold the Albrecht Business and assets to Manuel in December 1995.

The unarticulated argument of the Plaintiff may be that the Debtor has not explained what she did with the $24,000. However, she did state that she put it into the Bala Business, the financial status of which she contended that the Plaintiff misrepresented in the sales process and which turned out to be so poor that the Business could not be saved.

The Plaintiff relies on two authorities in its § 727(a)(5) argument, *Federal Provision Co. v. Ershowsky,* 94 F.2d 574 (2d Cir.1938); and *In re Gannon,* 173 B.R. 313 (Bankr.S.D.N.Y. 1994). The *Ershowsky* debtors attempted to explain the loss of $3,900 (then a considerable sum) and the proceeds of the sale of two motor vehicles in the sale of their business by stating that the proceeds were paid to unspecified creditors, while admitting that they made a $1,000 payment to their father. 94 F.2d at 575. The court found "a deliberate scheme to defraud; … activities … not in due course; … not that of men who were bringing an honest but unsuccessful venture to an end." *Id.* There is no basis to support such findings here.

In *Gannon,* the debtor claimed that he resold diamonds purchased from the plaintiff to a third party. The *Gannon* court stated that the debtor's "inconsistent and frequently contradictory testimony … casts significant doubt on whether [the buyer] exists, let alone whether these transactions occurred." 173 B.R. at 317. As noted at pages 951 and 953 *supra,* and throughout, we found the Debtor's explanations logical and consistent, and hence her testimony to be credible.

Thus, accepting the Debtor's explanation for her loss of the Albrecht Business (and the proceeds thereof) as sufficient, we reject the Plaintiff's attempt to deny the Debtor's discharge based on § 727(a)(5).

3. *THE PLAINTIFF'S FAILURE TO ATTEMPT TO AMEND ITS COMPLAINT TO INCLUDE § 727(a)(4) AS A CAUSE OF ACTION PRECLUDES CONSIDERATION OF § 727(a)(4) AS A BASIS TO DENY THE DEBTOR DISCHARGE; AND IT ALSO APPEARS THAT THIS CLAIM LACKS MERIT.*

Finally, the Plaintiff seeks to introduce § 727(a)(4)(A) as an alternative basis on which to deny the Debtor a discharge. The Plaintiff now claims that the Debtor knowingly made a false oath when she omitted any mention of the transfer of the Albrecht Business to Manuel in 1995 on her bankruptcy Statement of Financial Affairs. However, the Complaint and its cover sheet specifically reference only §§ 727(a)(2)(A) and (a)(5). The only allegation of the Complaint which could fairly be said to relate to a § 727(a)(4)(A) claim is paragraph 12, which reads as follows:

> 12. The Debtor could not identify the purchase price for the Narberth location or what had been done with the proceeds from the sale. *She has not identified the terms of the sale of this business to a family member within one year of the filing of her petition on her Bankruptcy schedules (Exhibit "C" hereto)* and still runs the Narberth location purportedly as "manager" (emphasis added).

This paragraph includes, at best, a backhanded reference to a § 727(a)(4)(A) claim.[2]

2. In its post-trial submission, the Plaintiff references an allegation in "¶ 20" of the Complaint. The Complaint only contains 18 paragraphs. We assume that this is in fact a reference to the foregoing ¶ 12.

It must be recalled that an attempt to set forth an additional basis for opposing a debtor's discharge after the bar date is in substance a request for a belated extension of time to raise a challenge to a discharge or dischargeability. *Compare In re Desiderio*, 209 B.R. 342 (Bankr.E.D.Pa. 1997) (a reasonable degree of due diligence in pursuing a claim prior to the normal deadline must be shown to justify allowance of a timely request to extend the time for filing a discharge/dischargeability complaint). Thus, an amended claim can relate back to the original complaint only if the original complaint has given fair notice of the facts underlying the newly-asserted claims to the debtor prior to the deadline for pleading such claims. *See In re Segal*, 195 B.R. 325, 330 (Bankr.E.D.Pa.1996), citing *In re Cohen*, 139 B.R. 327, 333 (Bankr.E.D.Pa.1992) (*"Cohen I"*). Put another way, where the text and substance of a newly-asserted claim requires no additional factual allegations besides those recited in the original complaint to support it, and the amendment merely seeks to add an additional legal ground by which the discharge or dischargeability of a specific debt is challenged, an amendment to the pleadings may be allowable.

The Plaintiff asserts that ¶ 12 of the Complaint alleges facts sufficient to put the Debtor on notice of a § 727(a)(4) claim, and that no new factual averments are necessary to support the Plaintiff's § 727(a)(4) claim. This assertion is highly questionable. None of the "unique facts" present in *Cohen I, supra*, where we allowed the plaintiff to amend, are present here, *i.e.*, the plaintiff confined itself to the newly-asserted claims; had originally put the newly-asserted claims on the cover sheet; and submitted a pre-trial Memorandum of Law arguing only the new grounds. 139 B.R. at 329–30. Rather, the instant Complaint and the Plaintiff's course of conduct prior to the end of the trial, which failed to put the Debtor on reasonable notice of any such claim. At that time, the Plaintiff made an "oral motion" to amend only when it realized that, in the court's mind, such a claim might have more merit than the claims actually tried. Thus, the instant facts appear closer to those of *Segal, supra*, 195 B.R. at 329–31, where a formal motion to amend,

presented after most but not all of the record had been made, was denied, than those of *Cohen I*, where an amendment was allowed.

Second, we note that, unlike the respective plaintiffs in *Cohen I* and *Segal*, the Plaintiff has not formally moved for permission to amend its complaint to include a § 727(a)(4) cause of action. The Plaintiff's procedural position is similar to, but weaker than, that of the plaintiff in *Staffieri, supra*. The *Staffieri* plaintiff, like the instant Plaintiff, failed to plead a § 727(a)(4)(A) cause of action based on the debtor's failure to file accurate schedules; first articulated such a desire after the trial; and never filed a formal amendment to its complaint even after the trial. However, the *Staffieri* plaintiff did file a motion to reconsider the decision adverse to it based on its desire to belatedly assert a § 727(a)(4)(A) claim, the denial of which the District Court affirmed on appeal. *See Staffieri II, supra*. Here, the Plaintiff has filed no written document, not even a motion for reconsideration, attempting to assert a § 727(a)(4)(A) claim.

The Plaintiff attempts to distinguish its position from that of the *Staffieri* plaintiff by arguing that the plaintiff in *Staffieri* had ample evidence to support a § 727(a)(4) claim when it filed its initial complaint, whereas, in the case at bar, because of the Debtor's failure to timely or completely respond to discovery, the Plaintiff had insufficient data at the time it filed its complaint to make a "definitive allegation of false oath under § 727(a)(4)" at trial.

We are unimpressed with this argument. A discharge/dischargeability claim plaintiff is obliged to make discovery regarding the potential grounds of its claims prior to the statutory bar date, *see Desiderio, supra*, 209 B.R. at 346, not after the filing of the complaint.

Also, there is a measure of inconsistency in the Plaintiff's assertions. On the one hand, the Plaintiff urges that it alleged in its Complaint all facts necessary to give fair notice to the Debtor of a § 727(a)(4) claim. Yet, on the other hand, the Plaintiff argues that it had insufficient facts available to enable it to plead a § 727(a)(4) cause of action at the time it filed its Complaint. What in fact

**956**

appears to be the case is that the Plaintiff, having failed to include § 727(a)(4) in its Complaint, and subsequently realizing the relative weakness of the claims actually pleaded therein, now seeks to introduce a new cause of action against a Debtor who had no notice of such claims until the end of the trial and therefore had no reason to defend against it.

■ However, even at that, if we were to consider the Plaintiff's § 727(a)(4) claim as a basis for denying the Debtor's discharge on its merits, we note that the Plaintiff would likely fail in carrying its burden of proof on the instant record. In order to establish a claim under § 727(a)(4), the Plaintiff must prove, similar to a § 727(a)(2) claim, that the Debtor made a false oath knowingly and with fraudulent intent. *See Blanchard, supra,* 201 B.R. at 127; *Cook, supra,* 146 B.R. at 935; and *Trinsey, supra,* 114 B.R. at 90.

■ The mere omission of property from the bankruptcy schedules does not establish fraudulent intent on the part of the debtor. The omissions must be both material to the bankruptcy case at issue and proven to have been made knowingly and fraudulently. *See Segal, supra,* 195 B.R. at 332–33. Thus, while we express our dismay at the Debtor's failure to reference the Albrecht Business transfer in her Statement of Financial Affairs, we find that the omission was not material to the Plaintiff's claims nor did it constitute a knowing and intentional effort by the Debtor to defraud her creditors with respect to the Albrecht Business transfer. The Debtor was credible in contending that she committed an honest mistake in omitting the transaction from her Statement of Financial Affairs. *Compare Segal, supra,* 195 B.R. at 333 (debtor persisted in falsifying his involvement with a business prior to bankruptcy; discharge nevertheless not denied).

In sum, we believe that the Plaintiff's informal assertion of a newly-perceived § 727(a)(4) cause of action was not properly raised procedurally, was untimely, and, in any event, lacks merit.

*D.  CONCLUSION*

For the foregoing reasons, we hereby refuse to sustain the Plaintiff's request that we deny the Debtor's discharge in this case in an accompanying order.