**In re Valerie A. LORD, Debtor.**

**The CIT Group/Sales Financing, Inc., Plaintiff,**

v.

**Valerie A. Lord, Defendant.**

**Bankruptcy No. 98–14143–MWV.
Adversary No. 99–1033–MWV.**

United States Bankruptcy Court,
D. New Hampshire.

Dec. 6, 1999.

Geraldine Karonis, Assistant U.S. Trustee, Manchester, NH, for UST J. Christopher Marshall.

Daniel R. Hartley, Casassa & Ryan, Hampton, NH, for Valerie Lord.

Jeffrey Schreiber, Schreiber & Associates, Danvers, MA, trustee.

Thomas J. Thomas, Thomas, Utell, Van De Water & Raiche, Manchester, NH, for The CIT Group/Sales Financing.

### MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it the complaint of The CIT Group/Sales Financing, Inc. ("CIT" or "Plaintiff") objecting to the Debtor's discharge under §§ 727(a)(2)(A) and (a)(5). For the reasons set forth below, the Court finds that the Plaintiff has failed to meet its burden under either § 727(a)(2)(A) or § 727(a)(5), and therefore denies the complaint.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### BACKGROUND

A one day trial revealed several relevant facts. Valerie Lord ("Lord" or "Defendant") was the owner of a 1995 thirty-six foot Apache powerboat financed by CIT. The boat was purchased in Florida, where it was operated for some time by the Defendant on a racing circuit. The boat was later transferred to Rye, New Hampshire, and stored at the residence of the Defendant's parents. At some point during the last week of August or first week of September of 1998, the Defendant removed the boat from her parent's property and towed it to a boat repair facility in Riverhead, New York. On October 28, 1998 the Defendant filed for relief under Chapter 7 of the Bankruptcy Code. On January 28, 1999 this Court granted CIT relief from the automatic stay of 11 U.S.C. § 362 in order to repossess the boat. When CIT attempted to repossess the vessel it discovered that its engines and stern drives were missing.

The Plaintiff claims that, prior to moving the boat to Riverhead, New York, Lord removed the engines and stern drives so that they could be installed in a new boat purchased in the name of Karl W. Patzke, a business acquaintance and participant with Lord in her racing endeavor, who, at least for a time, lived at the same residence as Lord. She moved the boat to New York, according to CIT, in order to conceal this scheme from CIT. Lord, on the other hand, claims the boat was moved to New York only after her mother demanded that it be removed from the Rye property and that she instructed her attorney to inform CIT of the boat's whereabouts shortly after it was moved. She also claims that at the time the boat

was towed to New York the engines were in the boat.

As to the stern drives, Lord contends that the original drives were removed from the boat after they were damaged and became inoperable when the boat ran aground on a sandbar. She claims that Apache, the boat's manufacturer, loaned her new stern drives so that the boat could continue to race. The new stern drives were intended to be used in conjunction with an upgrade to larger engines. However, the new stern drives were removed and returned to the manufacturer after she was forced to return to New Hampshire and the attempt to upgrade was abandoned. She claims that the old stern drives were never returned to her and she is unaware of their current location.

### DISCUSSION

Before discussing the individual claims, the Court notes that in order to achieve the Bankruptcy Code's goal of providing debtors with a "fresh start" through discharge, each section of § 727 is to be construed liberally in favor of the debtor and strictly against objecting creditors. *LaBrioche, Inc. v. Ishkhanian (In re Ishkhanian)*, 210 B.R. 944, 949 (Bankr. E.D.Pa.1997); *Bold City VII, Ltd. v. Radcliffe (In re Radcliffe)*, 141 B.R. 1015 (Bankr.E.D.Ark.1992).

### A. Section 727(a)(2)(A) claim.

CIT contends that Lord engaged in an ambitious scheme to hinder, delay or defraud her creditors by removing the stern drives and engine and hiding the boat in New York. Therefore, contends CIT, discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A). Section 727(a)(2)(A) of the Bankruptcy Code provides:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has

transferred, permitted to be transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition

11 U.S.C. § 727(a)(2)(A).

The burden is on the plaintiff in a § 727 action to prove the elements by a preponderance of the evidence. *See Rhode Island Depositors Economic Protection Corp. v. Hayes (In re Hayes)*, 229 B.R. 253, 259 (1st Cir. BAP 1999); *Barclays/American Business Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir.1994); *see also Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991) (holding that the proper standard in an action for exception to discharge under § 523 is preponderance of the evidence). In prosecuting a claim, § 727(a)(2)(A) requires the Plaintiff to satisfy four elements: (1) the debtor transferred, removed, concealed, destroyed, or mutilated; (2) his or her property; (3) within one year of the bankruptcy petition's filing; (4) with the intent to hinder, delay, or defraud a creditor. *In re Hayes*, 229 B.R. at 259; *Carter Engineering Company, Inc. v. Carter (In re Carter)*, 236 B.R. 173, 182 (Bankr.E.D.Pa.1999); *Clark v. Wilbur (In re Wilbur)*, 211 B.R. 98, 103 (Bankr.M.D.Fla.1997); *LaBrioche, Inc. v. Ishkhanian (In re Ishkhanian)*, 210 B.R. 944, 950 (Bankr.E.D.Pa.1997). The Court finds that CIT failed to meet its burden of proof on its § 727(a)(2)(A) claim by failing to prove that Lord either removed the engines and stern drives from the boat or towed the boat to the New York facility with the intent to hinder, delay or defraud CIT.

The plaintiff has the initial burden of proof in an action objecting to discharge. However, the burden will shift to the debtor to provide a satisfactory explanation once the party objecting to dis-

charge puts forth sufficient evidence to establish a prima facie case. *See In re Carter*, 236 B.R. at 180; *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 156 (Bankr. N.D.Ohio 1998). Although CIT produced some evidence that the engines were removed from the boat prior to its attempt to repossess the boat in February of 1999, the Court is not persuaded that CIT has met it burden of proving that the Defendant transferred, removed or concealed the engines with the intent to hinder, delay or defraud CIT.

Aside from evidence that the engines were not in the vessel at the time it attempted repossession, the only evidence produced by CIT to prove that Lord removed the engines came from an appraisal of the boat conducted in September of 1997, while the boat was still in Lord's possession, showing that the engines were not installed. However, the appraisal was conducted at a time when Lord was seeking to refinance the vessel in order to install new, larger engines to make the boat more competitive on the racing circuit. Lord testified that the engines were regularly taken in and out of the boat for maintenance and in preparation for the installation of new engines and that at the time of the appraisal they were simply removed.[1] In the absence of evidence to the contrary, the Court finds this explanation reasonable. Furthermore, the appraisal indicated that the boat was equipped with stern drives which were "like new." This supports Lord's explanation that she had obtained new stern drives in anticipation of an upgrade to new engines and provides a reasonable explanation for why there were no engines in the boat at the time of the appraisal. Finally, due to the failure of her attempt to upgrade to larger engines and continue in her racing endeavors, the Court finds reasonable Lord's explanation that the loaned stern drives were returned to the manufacturer prior to the boat's removal to New York.

The Court also finds unpersuasive the Plaintiff's attempt to suggest that Lord was involved in a fraudulent scheme to purchase a new boat in which she would install the engines that she had removed from the Apache powerboat. The Plaintiff attempted to prove that Lord posed as "Valerie Patzke" in an attempt to purchase a new boat with Carl Patzke, in which they would place the engines which she had removed from her boat. The Court will not accept mere allegations of such a scheme, and is unconvinced that CIT provided sufficient evidence to prove that the scheme did in fact exist.

The Defendant testified that in 1995 and 1996 she signed certain documents pertaining to the financing and sale of her boat as "Valerie A. Patzke." She later made changes to reflect that she, Valerie A. Lord, was the owner of the boat. The Plaintiff alleges that in early 1999 the Defendant again posed as "Valerie A. Patzke" in an effort to purchase a new boat with Carl Patzke for which they would obtain financing from Russo Marine Financial Services, Inc. An employee from Russo Marine Financial Services, Inc. testified that she recognized the voice of "Valerie Patzke" as that of Valerie Lord, whom she had spoken with two years earlier when Lord refinanced her boat. The Plaintiff also introduced documents that the Defendant admitted she signed as "Valerie Patzke" and which it contended matched the handwriting of documents signed as "Valerie Lord." The Defendant testified that she was not the "Valerie Patzke" listed on the 1999 financing application to Russo Marine Financial Services, Inc. and that in fact Valerie Patzke exists, is married to Karl Patzke, and that all three shared a house at the time of the application. She maintained that she signed none of the

---

1. The surveyor's appraisal report, which was introduced as evidence, corroborates Lord's explanation. In the report, the surveyor notes that Lord informed him that the engines were removed due to her intention to repower the boat with larger engines.

documents pertaining to Carl Patzke's purchase of the powerboat in 1999.

The Court finds the Plaintiff's evidence that the Defendant posed as "Valerie Patzke" inconclusive. A witness's testimony that she recognized the Defendant's voice from telephone conversations that occurred two years apart is simply not reliable. Furthermore, there was no expert testimony that the handwriting of the 1999 document signed "Valerie Patzke" matched that of Valerie Lord's and the court is not able to reach such a conclusion on its own. Finally, there was uncontroverted testimony from the Defendant that there is in fact a Valerie Patzke who is married to Carl Patzke.

Even accepting, *arguendo*, Plaintiff's contention that the Debtor posed as "Valerie Patzke," the Court cannot take the leap that Plaintiff seeks to infer a plan to install the engines from Lord's boat in the new vessel purchased by Carl Patzke. CIT asks the Court to accept the fact that Carl Patzke sought only to finance a portion of the new boat's purchase price as proof that they intended to purchase the boat without engines and install the engines from Lord's vessel. However, there is simply no other evidence to support this assertion. First, Lord testified that the engines were too small for her boat to be competitive on the racing circuit. It would make little sense for Carl Patzke and her to install the same engines in a new boat which would be used for the same purpose. Furthermore, all documents offered as evidence pertaining to the new vessel indicated that it did in fact come equipped with its own, larger engines.

Finally, the Court notes the extended period of time between the date on which the boat was towed to the New York facility and the date on which CIT attempted repossession. The Defendant testified that she towed the boat to New York in late August or early September of 1998. CIT did not attempt to repossess the boat until February of 1999. Thus, the boat sat unattended in the Riverhead, New York facility for at least five months. The Defendant also testified that at the time the boat was towed to New York, its engines were attached to the boat by only six bolts, making removal relatively easy. Finally, there was testimony that the marina in Riverhead, New York was not a regular boat storage facility where one would expect greater security for stored vessels. Based on these factors, the Court recognizes the possibility that the engines were removed or stolen during the period in which it sat unattended at the New York marina, after CIT had been made aware of its location.

CIT provided no evidence to prove that the engines were unaccounted for at any time while the boat was in Lord's possession. It also provided no evidence to prove that the engines were not installed in the boat at the time it arrived at the New York facility. In the absence of such evidence, the Court is unwilling to accept CIT's assertions of improper conduct by Lord and finds that the Plaintiff failed to satisfy its burden under § 727(a)(2)(A) with regard to the missing engines and stern drives. The Court will now turn to the issue of whether the boat was moved to New York with the intent to hinder, delay or defraud CIT.

In order to prove the fourth element of a § 727(a)(2)(A) claim the plaintiff must prove actual intent to hinder, delay or defraud on the part of the debtor. *Clark v. Wilbur*, 211 B.R. at 103. Actual intent may be inferred from a totality of the circumstances. *Id.* The Court finds that there is not sufficient evidence that Lord removed the boat from her parents property to the New York marina with actual intent to delay, hinder or defraud CIT.

At the time the boat was towed to New York, Lord had yet to file her bankruptcy petition. She testified that several vehicles used in her sanitation hauling business had been repossessed from her parents property and that her mother demanded

that she remove the boat. She also testified that she contacted the Riverhead, New York facility, where work had previously been performed on the boat, only after she was unable to obtain local storage for the boat.[2] According to Lord, she immediately caused her attorney to inform CIT of the boat's location. There was also evidence that Lord canceled her insurance policy on the boat at about the same time it was removed to New York, suggesting that she expected it to be repossessed. Based on the testimony and evidence provided regarding Lord's actions during this period, the Court cannot reasonably infer that Lord's actions in moving the boat to New York were taken with actual intent to hinder or delay CIT in its attempt to repossess the vessel. Rather, it appears likely that Lord fully expected the boat to be repossessed.

**B. Section § 727(a)(5) claim.**

Section 727(a)(5) of the Bankruptcy Code provides: "The court shall grant the debtor a discharge, unless the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).

■■■ Unlike § 727(a)(2)(A), there is no requirement that a debtor act fraudulently or intentionally in order to succeed on an objection to discharge under § 727(a)(5). *See Krohn v. Cromer (In re Krohn)*, 214 B.R. 86, 95 (Bankr.E.D.N.Y. 1997); *In re Ishkhanian*, 210 B.R. at 953. However, "the plaintiff in a § 727(a)(5) proceeding must introduce more than merely an allegation that the debtor has failed to explain losses … the objector must produce some evidence of the disappearance of substantial assets or of an unusual transaction which disposed of assets." *In re Ishkhanian*, 210 B.R. at 953. Once the loss of an asset is established, § 727(a)(5) turns to the plausibility of the debtor's explanation. *In re Cromer*, 214 B.R. at 95.

■■■ Although the Plaintiff provided evidence that the engines were not in the boat at the time it attempted repossession, the Court is satisfied that the Defendant has provided a plausible explanation for their disappearance. "A debtor's explanation for the loss or deficiency of an asset need not be meritorious but must convince the judge that the debtor has not hidden or improperly shielded assets." *In re Cromer*, 214 B.R. at 95. As discussed with regard to the § 727(a)(2)(A) claim, Lord testified that at the time the appraisal was conducted in 1997 she was preparing to upgrade to larger engines. There was also evidence that the boat was equipped with new stern drives which were to be installed with the new engines. This provides a reasonable explanation as to why the engines were not in the boat at the time of the appraisal. Finally, there was evidence that the boat sat unattended at the New York facility for several months and the engines were vulnerable to easy removal. Therefore, the Court finds, in the absence of further evidence by the Plaintiff, that the Defendant's explanation regarding the engines is satisfactory. CIT has simply failed to provide sufficient evidence to overcome this explanation.

The court also finds that the Plaintiff cannot prevail on the § 727(a)(5) claim with respect to the disappearance of the boat's stern drives. There was evidence that new stern drives were installed in the boat after the original drives were damaged. Lord testified that the manufactur-

2. There was testimony from Lord that at the time she moved the boat to New York she was concerned about the possibility of repossession and was hoping to avoid repossession for long enough to work out an agreement with CIT. However, the Court does not consider this admission, by itself, proof that, with an eye toward bankruptcy, she removed the property with the intent to hinder or delay creditors. Rather, her testimony revealed that she was desperately trying to work out an arrangement with CIT that would allow her to keep the vessels and that CIT was aware of the boat's location at all times.

er loaned her the stern drives only because it wished to have the boat continue in competition. After those plans were abandoned, Lord testified, the new drives were returned to the manufacturer and the old stern drives were not returned. The Court finds this to be a satisfactory explanation for the disappearance of this equipment.

For the reasons outlined above, the Court finds that the Plaintiff has failed to meet its burden of proof with regard to either the § 727(a)(2)(A) claim or the § 727(a)(5) claim. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate final judgment consistent with this opinion.